IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LIBERTY TEMPLE FULL GOSPEL CHURCH, INC.**, an Illinois Not-For-Profit Corporation d/b/a LIBERTY TEMPLE CHURCH OF BOLINGBROOK,<br><br>        Plaintiff,<br><br>   v.<br><br>**VILLAGE OF BOLINGBROOK,**<br><br>        Defendant. | Case No. 11 C 2173<br><br>Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment on Plaintiff's one-count action for violation of the Religious Land Use and Institutionalized Persons Act (the "RLUIPA"), 42 U.S.C. § 2000(a)(1). For the following reasons, the Motion is denied.

### I. BACKGROUND

Liberty Temple Church of Bolingbrook ("Liberty Bolingbrook") is a small congregation of less than 100 members, but is a branch of Liberty Temple Full Gospel Church, Inc. ("Liberty Gospel" or "Plaintiff") that has six locations in Chicago, San Diego, Orlando, Philadelphia, Waukegan and the aforementioned Bolingbrook. Liberty Gospel is a not-for-profit organization registered in Illinois. The Village of Bolingbrook (the "Village" or "Defendant") is a

public body, a municipal corporation located in DuPage and Will Counties.

Because the Plaintiff is the non-movant for summary judgment, all facts recounted here are based on Plaintiff's evidence unless otherwise indicated.

Members of Liberty Bolingbrook started small in July 2009, holding services in a Holiday Inn in Bolingbrook. Naturally, the church wanted its own home because it would enable it to conduct mid-week services and provide amenities and support to members that a hotel location cannot.

In August 2010, Plaintiff began scouting locations, and thought it had found one at 251 N. Bolingbrook Drive, Bolingbrook, Illinois. The landlord warned them that Bolingbrook Mayor Roger Claar ("Claar") had definite ideas about what types of occupants he wanted the landlord to rent to and, more specifically, that the mayor disfavored new churches in the Village. The landlord suggested Plaintiff confer with Claar before signing a lease. Plaintiff did, and Claar shot the idea down, allegedly telling Elder Marion Tucker of Liberty Gospel on October 6, 2010 that he "did not want any more churches in Bolingbrook" because "churches do not produce any tax revenue." The mayor also noted the facility had a lack of bathrooms, no handicap access, no fire prevention equipment and a lack of parking.

So, Plaintiff continued its search and found 378 Bolingbrook Commons, located at the northeast corner of the crossroads of Route 55 and Route 53 (Bolingbrook Drive). Again, the new landlord suggested the mayor might not favor the idea. However, because church members believed the location addressed the prior site's deficiencies in handicap access, bathrooms and fire code compliance, they decided to forgo another check-in with the mayor.

Perhaps seeking an authority he considered less subjective, Elder Tucker instead checked the Village zoning code and Village zoning map published on the Village website. As Plaintiff's map exhibit shows there were no zoning designation letter/numbers (*e.g.*, "B-2," "B-3," "B-4," etc.) directly on the parcel in question. Dkt. No. 49-3. Confusingly, the map key designates areas zoned B-1, B-2, B-3 and B-4 by the identical shade of orange. *Id.* Zones B-2 are reserved for "community retail" uses while Zones B-4 are for "Commercial Urban Development," which allows churches.

The parcel directly to the east of the subject property bears the same orange tone but is clearly marked "B-3" and is additionally separated from the parcel in question by heavy black vertical line.

Directly west of the parcel in question is a parcel bearing the identical orange hue and designated "B-4." There is no heavy

black line separating this "B-4" parcel from the parcel in question, although Bolingbrook Drive does bisect them.

Elsewhere on the map, orange parcels that are marked "B-2" are clearly cordoned off from other orange parcels that are designated "B-1," "B-3" or "B-4," by a heavy black line, even when the parcels are divided by a street.

For example, north of the site in question, an orange parcel marked "B-3" sits on the west side of Bolingbrook Drive while an orange parcel marked "B-2" sits on the east side.  In addition to being clearly marked by letter/number designations, these parcels are also partitioned by a heavy black vertical line on the B-3 parcel on its Bolingbrook Drive side to further indicate its separation from the B-2 parcel across the street.

The parcel in question, as mentioned, had no letter designation and no heavy black line separating it from the "B-4" parcel across the street.  The church took this to mean the parcel in question was also zoned B-4.  Both sides agree that under the zoning code, churches are allowed in B-4 areas, but not in B-2 areas.  Seeing no zoning issues, the church put down a $2,500 deposit on a 27-month lease that obligated it to make monthly payments toward a total of $66,000, beginning April 1, 2011.

Although the parties did not reintroduce it for summary judgment, the evidence presented in Temporary Restraining Order and Preliminary Injunction hearings showed that the Village's own

zoning ordinance says the Village's published zoning map controls and is part of the zoning code. Dkt. No. 15-2, 15. The Village protested that the intercession of the street between the parcel in question and the parcel marked "B-4" should have notified Plaintiff the parcel in question was actually B-2. At the hearings, the Court rejected this argument, as several other single-zone parcels span a street in several places on the map.

What was presented, both at the TRO and summary judgment stage, is evidence that the Village admits it simply forgot to put the B-2 designation on the parcel in question in its published, color map. The omission occurred at a time when the Village moved from black-and-white maps to a color version.

Believing it was leasing in a B-4 zone, the Plaintiff was somewhat surprised to find its application for a building permit rejected by the Village in January 2011. It was told complete architectural drawings would be needed. It was further told by Village representatives on February 10, 2011 that it would need a Special Use Permit ("SUP") and that the Village would not even accept the architectural drawings it had recently demanded. At that time, the Village also told Plaintiff that, under the Village zoning code, parking for the site was inadequate. (The location is in a largely abandoned shopping mall with 420 parking spaces.) Defendant now admits this was wrong and the actual parking

requirements were far less than what was communicated on February 10, 2011.

The following day, Church Elder Tucker met with Village employees and attempted to present the architectural drawings and the building permit application. Again, he was refused. Village Building Department employee Dennis Kowalczak contemporaneously told Elder Tucker that a church "would not be approved for that location" and handed him a special use permit application packet.

Plaintiff next took its case directly to the mayor on February 23, 2011 and contends the mayor told church representatives Bolingbrook had enough churches and that the landlord never should have rented to them without his permission. Claar said he'd consider letting the church stay if they promised to be gone in two years. He then dismissed them, telling them to "go look around for another location."

Five days later, Claar was more definite, telling Plaintiff's lawyer in a phone call that "the Village would not back any zoning ordinance allowing the Church to operate at this site." Dkt. No. 49, 5. On March 10, 2011, the Village "red tagged" the property, contending construction was going on there without a permit. Plaintiff says this was work the landlord performed, not anything the church did.

On March 11, 2011, Elder Tucker again delivered the building permit application and drawings, and again on March 23, 2011, he

was told to take them back. Plaintiff then filed this suit on March 30, 2011.

## II. LEGAL STANDARD

Summary judgment is proper where there is no genuine issue as to any material fact. *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003) (hereinafter "*C.L.U.B.*"). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. Once this burden is met, the non-moving party must designate specific facts to support or defend its case. *Calvary Temple Assembly of God v. City of Marinette*, No. 06-C-1148, 2008 U.S. Dist. LEXIS 55500, at *11 (E.D. Wis. 2008) (internal citations omitted).

## III. ANALYSIS

Defendant has moved for summary judgment on the grounds that the Plaintiff has not shown it was "substantially burdened" by the Village's actions, in part because it did not apply for a Special Use Permit (the "SUP").

The Seventh Circuit has addressed RLUIPA a number of times in the context of zoning fights over the location of a church.

Most instructive, however, are the cases that deal with the statute section at issue here, 42 U.S.C. § 2000(a)(1): *World Outreach Conference Center, et al. v. City of Chicago*, 591 F.3d 531 (2009) (hereinafter "*World Outreach*"); *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895

(2005) (hereinafter "*New Berlin*"); and *Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846 (2007) (hereinafter "*Petra*").

In *World Outreach*, a religious organization sought to take over a former Salvation Army Single Room Occupancy ("SRO") residence and continue to rent the rooms as affordable housing for the poor. Although the zoning had changed since the building was first utilized as an SRO, the zoning code allowed for "nonconforming use[s]" that carried on a property in the same nonconforming use that had been grandfathered in. The local alderman, however, upset the building had not been sold to his political donor, held up the deal, asking the council to rezone the parcel yet again. The religious group was told it needed a SUP before it could get an SRO license. The city had no other reason for refusing to issue the SRO license other than the SUP issue. The city sued for injunctive relief on the SUP issue, then dropped the suit. When the church sued under RLUIPA, the city hastily issued the SRO license.

The religious group argued it had been substantially burdened by being impeded in its religious mission and incurring substantial legal expenses. The District Court dismissed, noting the group had not applied for the SUP. The Seventh Circuit reversed, noting that, while the principle of exhaustion of administrative remedies is a sound one, it did not apply in *World Outreach*'s case because World "was *already* entitled to continue the use of the center."

- 8 -

*World Outreach*, 591 F.3d at 537. Additionally, the Court found, such application was not necessary because the city's zoning board of appeals had a fixed policy of not acting on zoning appeals while an alderman's rezoning request was pending. *Id*. Essentially, the application for the SUP would have been futile, the court ruled, and such application was not necessary to bring suit.

Additionally, the court found the church had adequately alleged substantial burden. "The burden imposed on a small religious organization catering to the poor was substantial (for burden is relative to the weakness of the burdened), . . . and there was no possible justification for it." *Id*. at 537-538. The Court also assumed that determining whether a burden is a substantial burden, and whether that burden is justifiable, is a question of fact. *Id*. at 539.

This scenario, where a church reasonably believes it has the correct zoning approval or permission before committing to a site purchase or lease, is distinguished from one where a church could not reasonably have so believed. *See Petra*, 489 F.3d at 849, 851 (church's purchase of property when it knew the village did not zone the site for churches, but believed that zoning to be illegal, did not create legitimate estoppel issues or create a substantial burden because church assumed the risk of buying there).

*Petra* also stands for the proposition, reiterated in several other Seventh Circuit cases, that municipalities do not violate

RLUIPA merely because they limit churches to certain zones within their borders. *Id*. at 851 ("When there is plenty of land on which religious organizations can build churches, . . . the fact that they are not permitted to build everywhere does not create a substantial burden.")

But, "[w]hat is true is that, as in [*New Berlin*] . . . once the organization has bought property reasonably expecting to obtain a permit, the denial of the permit may inflict a hardship on it." *Id.* at 851.

This case, then, turns on the issue of what the property leased was zoned: B-2 (Community Retail) or B-4 (Commercial Urban Development). Both sides agree churches are allowed in the latter, but not in the former.

If it is the former, the church was not substantially burdened merely by the fact that it was not allowed to locate wherever it chose. If it is zoned B-4, the Village's refusal to accept building permit application and architectural drawings, and forcing the church to either apply for a SUP or go to court, may have substantially burdened the Plaintiff in violation of RLUIPA.

Plaintiff did attempt to frame the zoning question as a matter of law for declaratory judgment, but because it did so too late (after Defendant had filed for summary judgment) the Court declined to accept such an amended complaint. *See* Dkt. No. 40-1, Page ID No. 481; Tr. of Oct. 13, 2011.

Therefore, the Court necessarily turns to the closely-related question of fact: Did the church reasonably believe the parcel to be zoned for a church? The Court notes the Village's Local Rule 56.1 Statements of Facts never actually affirmatively claim the parcel is, in fact, zoned B-2, merely that "[t]he Village never intended to change the Zoning District for the Property." Dkt. No. 38, 2. No matter. Even interpreting this as an averment that the land is, in fact, zoned B-2, the Plaintiffs adequately refute it. "Prior to leasing at 378 Bolingbrook Commons, Tucker viewed the Village Zoning Map . . . and Zoning Code . . . , learning that the premises were in the B-4 zone and a Church was a permitted use." Dkt. No. 49, 2. This creates an issue of material fact.

Defendants protest that the church never applied for the Special Use Permit. Plaintiff admits this. But Plaintiff also contends that, from the get-go, Mayor Roger Claar was "hostile to the Church," telling Marion Tucker of Liberty Temple two months before the church took a lease that he "did not want any more churches in Bolingbrook" because "churches do not produce any tax revenue." Dkt. 49, 1. The Plaintiff has also represented the Village unreasonably refused to honor its published zoning code and map and insisted a SUP was necessary, when it was not. Moreover, Plaintiff claims Mayor Claar told Plaintiff's attorney on February 28, 2011 (after the lease had been entered into) that "the

Village would not back any zoning ordinance allowing the Church to operate at this site."

Based on the Village's own published map and zoning ordinance, a jury could reasonably find that the church reasonably believed a SUP was not legally needed. Moreover, based upon Mayor Claar's representation on February 28, 2011 to Plaintiff's attorney, a jury could construe it as a definitive pre-emptive denial of any SUP Plaintiff might have filed. Therefore, Plaintiff was not obligated to go bang its head against a wall and apply for a permit it was told it would never get. In respect to the SUP, this case is almost a fact-for-fact parallel of the *World Outreach* case.

Defendant also claims that Plaintiff has not shown substantial burden because it was not ready to move into the church had a building permit been issued upon first request. Indeed, once the Court issued the TRO, there were months of plan submissions, rejections, and revisions and construction necessary. This is a very cogent argument, but it goes to weigh of damages and misses entirely the fact that Plaintiff has claimed substantial burden beyond the allegations concerning immediate occupancy.

Plaintiff alleges substantial burden in respect to the $7,500 retainer it was forced to pay attorneys plus the fees incurred far in excess of that initial retainer. Dkt. No. 49. Plaintiff also claims, despite the proper zoning, the Village irrationally refused to consider Plaintiff's architectural drawings and application for

a building permit (*Id.* at 2, 5) and told the church it needed parking spaces far in excess of what the Village now admits was actually needed. *Id.* at 3, Dkt. No. 56, 3-4.

All of these facts raise a more-than-reasonable inference that would allow a jury to find that the Village had no compelling reason to refuse to consider the drawings and the church's building permit *application*, or to demand a SUP, and that doing so created a substantial burden upon the small congregation by forcing it to file suit and incur legal fees. It could also reasonably be found that these demands delayed the time the church could begin using the property, but did not delay the church's rent payments on that property. Dkt. No. 49, 5-7.

The facts entered by Plaintiff regarding the mayor's alleged hostility, the refusal to accept a permit application for what was a properly zoned property, the demand for amounts of parking that were admittedly excessive all raise an inference that the Village refused building permit applications without legitimate cause and so substantially burdened the Plaintiff.

## IV. CONCLUSION

The Plaintiff has adequately alleged facts that create a dispute of material fact central to the cause of action: whether the Village imposed a land use regulation that created a substantial burden on Plaintiff without demonstrating that doing so furthered a compelling government interest and in the least

restrictive means necessary, in violation of RLUIPA. Therefore, Defendant's Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

                                    Harry D. Leinenweber, Judge
                                    United States District Court

**DATE:** 4/12/2012